UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| DEBORAH K. KENTCH, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:15-cv-00193-AGF |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Cynthia Barron was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

Plaintiff, who was born on March 15, 1959, filed her application for benefits on November 21, 2007, alleging disability beginning April 27, 2007, due to permanent vision problems caused by a stroke that she suffered in 1995. On February 1, 2008, Plaintiff's application was denied at the initial administrative level, and she thereafter requested a

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit.

hearing before an Administrative Law Judge ("ALJ").

**<u>Initial Hearing Decision</u>**

A video hearing was held on December 15, 2009, at which Plaintiff, represented by counsel, and a vocational expert ("VE") testified. On January 8, 2010, the ALJ followed the five-step sequential evaluation process discussed below, and concluded that Plaintiff was not disabled because, although Plaintiff had the severe impairment of right homonymous hemianopsia[2] resulting from a cerebral hemorrhage that she suffered in 1995, the impairment did not meet or medically equal one of the deemed-disabling impairments listed in the Commissioner's regulations, and Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, except that she had mild restrictions in interacting with others. The ALJ noted that, although Plaintiff complained of vision problems, she had not received any treatment; that Plaintiff's credibility at the hearing was poor and not supported by the objective medical findings; and that Plaintiff testified at the hearing that she was currently working as a substitute teacher but simply not getting paid enough, which the ALJ found was inconsistent with Plaintiff's claim of disability. The ALJ relied on the testimony of the VE to conclude that Plaintiff was capable of performing all of her past relevant work (including as a teacher, plant care worker, and library aide), and was therefore not disabled.

---

[2] As discussed below, the subsequent administrative decisions addressing Plaintiff's claims stated that Plaintiff had the severe impairment of *left* homonymous hemianopsia, which is supported by the medical record. Plaintiff was consistently diagnosed with left homonymous hemianopsia, resulting in bilateral vision loss to the left side of her field of vision.

Tr. 105-15.

Plaintiff appealed that ALJ's decision, and on November 23, 2010, the Appeals Council of the Social Security Administration remanded the case for further consideration because, despite the ALJ's finding that Plaintiff's severe impairments included right homonymous hemianopsia, the ALJ did not include any visual limitations in the RFC he assessed for Plaintiff.   Tr. 116-18.

**<u>Second Hearing Decision</u>**

On remand, another evidentiary hearing was held, beginning on May 3, 2011, and continuing on March 28, 2012.   Plaintiff, represented by counsel, and a different VE testified, as did a friend of Plaintiff.   By decision dated April 25, 2012, a second ALJ again followed the five-step sequential evaluation process and concluded that Plaintiff was not disabled.   Specifically, the second ALJ found that Plaintiff had the severe impairment of left homonymous hemianopsia resulting from an intracranial hemorrhage in 1995, but that this impairment did not meet or medically equal one of the deemed-disabling impairments listed in the Commissioner's regulations.   In making this finding, the second ALJ gave "significant weight" to the opinion of a non-examining medical expert, ophthalmologist Bernard Zuckerman, M.D., that Plaintiff's visual impairment did not meet or equal any of the visual impairments listed in the relevant regulations.   The second ALJ then concluded that Plaintiff retained the RFC to perform certain light, unskilled jobs (mail clerk, office helper, and stock checker) that the VE testified that a person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available

3

in significant numbers in the national economy. Tr. 119-35.

Plaintiff again appealed, and on May 15, 2013, the Appeals Council again remanded, this time finding that the second ALJ had given "significant weight" to Dr. Zuckerman's opinion but did not address a portion of that opinion which indicated that Plaintiff was not able to avoid workplace hazards, such as boxes on the floor, doors ajar, or approaching people or vehicles. The Appeals Council noted that this portion of Dr. Zuckerman's opinion was also supported by a state consultative examiner, Robert D. Lewis, M.D., who reported that he witnessed Plaintiff running into doorframes and people during his examination. The Appeals Council noted that "[u]nder Social Security Rulings 83-14 and 96-9p, the occupational bases for sedentary, light, and medium work are significantly diminished where there is a loss of visual field manifesting in tripping over boxes while working, or an inability to detect approaching persons or objects." Tr. 136-40.

**Final Hearing Decision**

After the second remand, a final evidentiary hearing was held on June 5, 2014. Plaintiff, represented by counsel, and a different VE testified at this hearing, as did a non-examining medical expert, ophthalmologist Jeffrey A. Horwitz, M.D. By decision dated June 24, 2014, a third ALJ (referred to as the "ALJ" from here on) again followed the five-step sequential evaluation process and concluded that Plaintiff was not disabled.

At the first step, the ALJ found that Plaintiff engaged in substantial gainful activity ("SGA") as defined by the Commissioner's regulations, from October 2008 through June

4

2009, after Plaintiff's alleged onset of disability, but that there was a continuous 12-month period after the onset date during which Plaintiff did not engage in SGA because her earnings as a substitute teacher were too low.

At step two, the ALJ found that Plaintiff had the severe impairments of migraines and left homonymous hemianopsia, which was the residual effect of a stroke Plaintiff suffered in 1995. But the ALJ concluded, at step three, that these impairments did not meet or medically equal one of the deemed-disabling impairments listed in the Commissioner's regulations. The ALJ noted that Dr. Horwitz testified that he believed Plaintiff's visual impairment did not meet, but equaled,[3] Listing 2.03A.[4] However, the ALJ relied on Dr. Horwitz's additional testimony that people with the same impairment may not necessarily have the same limitations because of differences in ability to adapt,

---

[3] As explained below, to establish that an impairment medically equals a listed impairment, "a claimant 'must present medical findings equal in severity to all the criteria for the one most similarly listed impairment.'" *Igo v. Colvin*, 839 F.3d 724, 730 (8th Cir. 2016).

[4] Listing 2.03 provides:

> 2.03 *Contraction of the visual field in the better eye*, with:
>
> A. The widest diameter subtending an angle around the point of fixation no greater than 20 degrees; or
>
> B. A mean deviation of—22 or worse, determined by automated static threshold perimetry as described in 2.00A6a(v); or
>
> C. A visual field efficiency of 20 percent or less as determined by kinetic perimetry (see 2.00A7b).

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 2.03.

and that Plaintiff appeared to have adapted very well, in light of the evidence that she continued to drive without any license restrictions and that she continued to substitute teach, on average, one to three days per week. The ALJ found that Plaintiff's demonstrated functional capacities showed that her visual impairment did not equal the severity of the listed impairment, and therefore gave little weight to Dr. Horwitz's opinion to the contrary.

At step four, the ALJ found that Plaintiff had the RFC to perform less than the full range of light work as defined in the Commissioner's regulations, in that:

> she is able to lift and carry ten pounds frequently and twenty pounds occasionally; she is able to sit for about six hours of an eight-hour workday; she is able to stand and/or walk for about six hours of an eight-hour workday; she is precluded from performing any work that requires binocular vision; she is limited to no more than frequent visual tasks with the better eye due to limited depth perception and field of vision; she is precluded from climbing ladders, ropes, and scaffolds; she is precluded from working around hazards such as heights, machinery, dangerous equipment, and so forth; she is precluded from work that requires driving; she is limited to less than occasional balancing; and she is precluded from work that requires frequent identification of small parts.

Tr. 19. In formulating this RFC, the ALJ considered, among other things, the 2008 opinion of state examining consultative expert Dr. Lewis; the 2011 opinion of non-examining medical expert, Dr. Zuckerman; the April 30, 2014 opinion of state consultative examining family-practice physician, Bruce Preston, M.D.; and the June 5, 2014 testimony of non-examining medical expert Dr. Horwitz.

In separate discussions of each of these opinions, the ALJ found that some portions of the opinions were consistent with the evidence of record as a whole, including that

Plaintiff was capable of light work and could read both small and ordinary print, could view a computer screen, could determine differences in shape and color of small objects, and should generally avoid driving and hazards such as heights, machinery, dangerous equipment. However, the ALJ gave little weight to other portions of the opinions.

The ALJ noted that Dr. Lewis reported observing Plaintiff bumping into doorframes and people during his examination of Plaintiff, and that Dr. Zuckerman indicated that Plaintiff would be unable to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles. However, the ALJ gave "little weight" to this portion of Dr. Zuckerman's opinion because no provider other than Dr. Lewis had observed Plaintiff bumping into objects or people; Dr. Horwitz testified that Plaintiff could avoid such hazards by turning her head to compensate for the loss of her left visual field; and as discussed below, Plaintiff had in fact been avoiding such ordinary hazards in the workplace in her role as a full-time teacher and substitute teacher for 20 years, and had been observed by agency investigators in April 2014, as having no problem avoiding hazards in a number of settings.

With respect to Dr. Preston's medical source statement, the ALJ concluded that, other than the findings that Plaintiff would be able to perform light work in terms of lifting twenty pounds occasionally and ten pounds frequently, sitting six hours a day, walking six hours a day, and operating with no motor or sensory deficits, which were consistent with the record as a whole, the remainder of Dr. Preston's opinion was inconsistent with the evidence of record and was therefore entitled to "little weight." In particular, the ALJ

7

found that Dr. Preston's opinion that Plaintiff could only stand four hours a day and could never stoop, kneel, crouch, or crawl, was not supported by any explanation other than Plaintiff's "subjective allegation that she avoids exerting herself because it brings on migraines," an allegation that the ALJ found was not credible in light of the medical evidence of record. Tr. 22. The ALJ also noted that "a person who can never stoop would be bedridden, which is clearly not the case." Tr. 22-23.

In discussing the other evidence of record, the ALJ noted that Plaintiff had suffered from the same visual impairment since her stroke in 1995, but that she taught full time at the SGA level for several years thereafter, and that even after the alleged onset date in 2007, Plaintiff continued to work as a substitute teacher one to three days per week, on average. The ALJ also pointed to Plaintiff's testimony at the June 5, 2014 hearing, that she had never been to a rehabilitation program for the visually impaired, and that she had been living with her impairment for 19 years and could "teach" such a program at this point.

Further, the ALJ noted that Plaintiff had continued to drive without any significant accidents since 1995, and that her driver's license was renewed in March 2010 without any restrictions. With respect to Plaintiff's migraines, which Plaintiff testified were brought on by doing "anything" for too long, or by lifting "anything with any weight," the ALJ noted that Plaintiff consistently reported to medical providers that the medication she had been prescribed for a number of years for her migraines worked well, and that if she felt a headache coming on, she would take one tablet, which would often stop the migraine.

The ALJ also noted that Plaintiff had not required frequent medication changes or aggressive treatment for her migraines.

With respect to Plaintiff's ability to avoid ordinary workplace hazards, the ALJ relied on a report by the Cooperative Disability Investigation ("CDI") unit of the Social Security Administration, issued on May 6, 2014, regarding its investigation into Plaintiff's claims. As the ALJ noted, the CDI unit conducted surveillance of Plaintiff on April 30, 2014, and reported observing that Plaintiff was able to drive 60 miles to the town where her consultative examinations were scheduled; consistently drove four to five miles over the speed limit without apparent difficulty; was able to navigate around and order food from a fast-food restaurant, including walking quickly through a parking lot and avoiding vehicles leaving the drive-thru window without apparent difficulty in seeing those vehicles; and walked in, maneuvered through, and shopped at Wal-Mart without noticeable difficulties in navigating crowds or objects.

Finally, the ALJ found that Plaintiff's activities of daily living were inconsistent with her claims of disabling visual problems. Specifically, the ALJ noted that Plaintiff lived alone; took care of own meals and housework; maintained a Facebook account; enjoyed sewing, swimming, and going for walks in the park; obtained a fishing license in 2007, 2011, and 2012; and reported "cutting down a Christmas tree in the woods" in December 2012.

Based on the testimony of the VE, the ALJ found that Plaintiff had the RFC to perform her past relevant work as a data entry clerk. Alternatively, at step five, the ALJ

found that Plaintiff had the RFC to perform work that the VE had stated a person with Plaintiff's RFC and vocational factors could perform and that were available in significant numbers in the national economy, namely, the jobs of general clerk (classified as light and semiskilled work), receptionist (sedentary and semiskilled), and order clerk (sedentary and semiskilled). Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. Tr. 10-32.

Plaintiff's request for review by the Appeals Council was denied on August 27, 2015. Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action now under review.

**Plaintiff's Arguments Before This Court**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record. More specifically, Plaintiff argues that the ALJ erred in discounting Dr. Horwitz's opinion that Plaintiff's impairment equaled the severity of Listing 2.03A, discounting Dr. Preston's opinion (in check-box form) that Plaintiff could never stoop, and not addressing Dr. Preston's opinion (also in check-box form) that Plaintiff could not avoid ordinary workplace hazards such as boxes on the floor, doors ajar, or approaching people or vehicles, which was supported by Dr. Zuckerman. Plaintiff also argues that the ALJ erred in finding that Plaintiff's daily activities were inconsistent with her allegations of disability and in failing to support the RFC finding with a narrative discussion of the evidence. Plaintiff asks that the ALJ's decision be reversed and the case remanded for an award of benefits or, alternatively, for further development of the record.

**Agency Records, Medical Records, Evidentiary Hearing, and ALJ's Decision**

The Court adopts the unopposed facts set forth in Plaintiff's Statement of Uncontroverted Material Facts (ECF No. 13-1), with which Defendant represented she agrees, and the unchallenged facts set forth in Defendant's Statement of Additional Facts (ECF No. 22-2). Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse . . . merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citation omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because

11

the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.  *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  As indicated above, the Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If not, the Commissioner decides whether the claimant has a severe impairment or combination of impairments.

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.  If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.  If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience.  *See, e.g., Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).  When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce

testimony by a VE (or other similar evidence) to meet the step-five burden. *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**<u>Dr. Horwitz's Opinion as to Medical Equivalence</u>**

Plaintiff does not contend, nor does the record support, that she meets any of the deemed-disabling visual impairments listed in the regulations. If a visual impairment does not meet a § 2.00 listing, the regulations state that the agency will "consider whether [the claimant has] an impairment(s) that satisfies the criteria of a listing in another body system," including "whether the impairment(s) medically equals a listing." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 2.00E. "[T]he responsibility for deciding medical equivalence rests with the [ALJ]," and in determining medical equivalence, the ALJ is to "consider all evidence in [the claimant's] case record about [the claimant's] impairment(s) and its effects on [the claimant] that is relevant to this finding." 20 C.F.R. § 404.1526(c), (e).

"To establish equivalency, a claimant 'must present medical findings equal in severity to all the criteria for the one most similarly listed impairment.'" *Igo*, 839 F.3d at 730 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990), *superseded by statute on other grounds as stated in Colon v. Apfel*, 133 F. Supp. 2d 330, 338-39 (S.D.N.Y. 2001)). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, 493 U.S. at 531.

Here, although Dr. Horwitz opined that Plaintiff's visual impairment was equal in severity to Listing 2.03A, he based this opinion primarily on the fact that he believed

13

Plaintiff's impairment equaled "the functional difficulty that one would have who did have less than 20 degrees visual field in all meridian." Tr. 885. Therefore, he appeared to improperly rely on the functional impact of Plaintiff's impairment, rather than presenting medical findings equal in severity to all of the criteria for Listing 2.03A.

Moreover, Dr. Horwitz went on to testify that "[p]eople vary in their ability to adapt" to this type of impairment, that "some people would be extremely disabled [and] [o]thers would get along reasonably well," and that Plaintiff had "adapted very, very well," including "by turning her head and using other techniques." Tr. 876, 886-87. And as the ALJ noted, Plaintiff worked full-time for several years after she first became impaired, continued to work part-time after the alleged disability onset date, and, as late as April 2014, was observed by the CDI investigators maneuvering easily around a restaurant, store, and parking lots without assistance. Tr. 778-79.

In light of the above, the Court concludes that the ALJ was entitled to find that Plaintiff did not meet or equal a deemed-disabling listing. *See McAllister v. Astrue*, No. 1:05CV59 AGF, 2008 WL 4371494, at *16–17 (E.D. Mo. Sept. 19, 2008) (holding that although two ophthalmologists noted objective test results that met the criteria for listed visual impairments, the record included contradictory comments as to the plaintiff's functioning and observations of the plaintiff easily maneuvering around rooms and spotting objects, and the ALJ was entitled to resolve these conflicts and find that Plaintiff did not meet the listing criteria).

**Dr. Preston's Opinions as to Stooping and Avoiding Ordinary Workplace Hazards**

Although the Court does not agree with the ALJ's finding that a person who can never stoop would necessarily be bedridden, the Court concludes that substantial evidence supports the ALJ's other reasons for discounting Dr. Preston's opinion. Dr. Preston did not support his check-box finding with respect to Plaintiff's ability to stoop with any narrative description other than his note that Plaintiff self-reported that she did not stoop to avoid exacerbating her migraines. But the record supports the ALJ's finding that Plaintiff's complaint in this regard was not credible, because she consistently reported to treatment providers that her migraines were well managed and effectively treated with her prescribed medication. Tr. 822, 825. Thus, the ALJ was entitled to discount Dr. Preston's opinion as to Plaintiff's ability to stoop. *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017) ("[A]n ALJ need not give [even] a treating physician's opinion controlling weight when the opinion is based on a claimant's subjective complaints that ALJ does not find credible").

Likewise, although the ALJ did not expressly discuss Dr. Preston's check-box finding regarding Plaintiff's ability to avoid ordinary workplace hazards, the ALJ did discuss Dr. Zuckerman's identical check-box finding, and also stated that, aside from limited portions, Dr. Preston's opinion was not supported by substantial evidence because it was inconsistent with the record as a whole.

The record, indeed, contains inconsistencies which were discussed by the ALJ and which detract from Dr. Preston's and Dr. Zuckerman's opinions in this regard. *See*

15

*Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) ("The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole."). Examples of these inconsistencies include that: Plaintiff suffered from the same impairment since 1995, but worked full time thereafter, and continued to work part time after the alleged onset date; although Dr. Lewis observed Plaintiff on a single occasion bumping into people and doorframes, no other provider made similar observations; and Plaintiff was observed on April 30, 2014 (the same day as Dr. Preston's examination) driving 60 miles at speeds 4 to 5 miles over the limit, and easily navigating and maneuvering around stores and parking lots (Tr. 778-79). Moreover, as Defendant correctly notes, Plaintiff testified at the June 5, 2014 evidentiary hearing that she applied for and received unemployment benefits for approximately two years, beginning at the end of 2009, after her alleged onset date (Tr. 844-45)

These facts demonstrate at least some inconsistency with Plaintiff's claim of a disabling visual impairment. *See, e.g., Milam v. Colvin*, 794 F.3d 978, 984–85 (8th Cir. 2015) ("In seeking and obtaining such unemployment benefits, [the claimant] evinced a willingness and ability to work, which contradicts her claim of disabling pain," and the claimant's "search for a new job after her layoff further evinces both a willingness and ability to work after she allegedly became disabled."); *Hilt-Hayden v. Comm'r, Soc. Sec. Admin.*, No. 6:15-CV-00258-HZ, 2016 WL 3396937, at *4-5 (D. Or. June 14, 2016) (affirming an ALJ's reliance on, among other things, a CDI report finding that "despite allegations of severe vision issues, [the claimant] had no trouble walking, opening a gate,

looking at a photograph, or dialing a phone," to exclude vision-related limitations from the claimant's RFC); 20 C.F.R. § 404.1571 ("The work . . . that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level," and "[e]ven if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

The ALJ was responsible for weighing this conflicting evidence, and the Court cannot say that the ALJ's findings with respect to Plaintiff's RFC were outside the available "zone of choice."

**Plaintiff's Daily Activities**

Plaintiff also argues that the ALJ exaggerated the nature and extent of Plaintiff's daily activities. It is generally true that a claimant's ability to engage in personal activities does not constitute substantial evidence that she has the functional capacity to engage in SGA. *See, e.g., Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007). But a claimant's daily activities may undermine her credibility. *See, e.g., Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that Harris's daily activities, including part-time work, cleaning house, attending church, and dining out with her boyfriend, were inconsistent with her claim of disabling pain.").

Here, it was reasonable for the ALJ to find that Plaintiff's activities, including driving, living alone, taking care of her own meals and housework, sewing, swimming, going for walks in the park, and cutting down a Christmas tree, were inconsistent with her

17

subjective complaints of disabling vision problems. *See Casson v. Colvin*, No. C15-4016-LTS, 2016 WL 5422111, at *7 (N.D. Iowa Sept. 27, 2016) ("[A] claimant's ability to engage in a specific activity (in this case driving) that should be precluded by his or her alleged symptom (in this case vision issues) does cut against the claimant's credibility.").

**The ALJ's Narrative Discussion**

Finally, the Court rejects Plaintiff's argument that the ALJ erred in failing to support the RFC finding with a narrative discussion of the evidence. The ALJ's RFC determination was supported by a detailed description of the evidence related to Plaintiff's credible limitations, and the Court finds no error in this respect.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 5th day of September, 2017